IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ISIDOR ALEXANDER RUBIO,            *
        Plaintiff,
  v.                               *   CIVIL ACTION NO. RWT-12-3046

MCI-H 2010 STAFF, et al.,           *
        Defendants.
                     ***

**MEMORANDUM OPINION**

Pending are Warden Wayne A. Webb, Chief of Security Ronald B. Brezler, and Medical Supervisor Salik Ali's[1] Motions to Dismiss, or in the Alternative for Summary Judgment.[2] ECF Nos. 15 & 30. Plaintiff has responded. ECF No. 32. Upon review of the papers and exhibits filed, the Court finds that an oral hearing in this matter is unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the motions will be granted.

**Background**

Plaintiff, in his Amended Complaint (ECF No. 4), states that on June 2, 2010, while incarcerated at the Maryland Correctional Institution in Hagerstown, Maryland ("MCI-H"), he was attacked by three gang members. As a result of the attack, he suffered a broken right hand for which he was allegedly denied adequate medical care. Plaintiff states that nine months after the attack, he underwent surgery at Bon Secours Hospital where his hand was re-broken as part of

---

[1] The clerk shall amend the docket to reflect the proper spelling of Defendant Salik Ali's name.

[2] As will be discussed *infra*, the Complaint will be dismissed as to all Defendants because of Plaintiff's failure to exhaust administrative remedies and failure to state a claim. The Court notes, however, that Jackelin Shank, Case Management Supervisor, was never served with the Complaint. Additionally, Plaintiff's claims against "MCI-H 2010 Staff" and "RCI 2012 Staff" should also be dismissed as there are no such entities amenable to suit. Plaintiff has failed to particularize a claim against "all staff members" working at these prisons in 2010 or 2012. To the extent he seeks to hold the prison itself liable, his claim also could not proceed. Under the Eleventh Amendment to the United States Constitution, a state and its agencies and departments are immune from suit in federal court brought by its own citizens or the citizens of another state, unless it consents. *See Pennhurst State School and Hospital v. Halderman*, 465 U. S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. State Gov't Code Ann., § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, Plaintiff's claims against the prisons where he was held, which are agencies of the State of Maryland, are barred by the Eleventh Amendment.

the surgical procedure. He alleges that he was denied physical therapy for his hand and states that the delay in his treatment was the result of Defendant Salik Ali's "medical negligence." ECF Nos. 1 & 4. He claims that he has now lost feeling in his hand. *Id.*

Additionally, Plaintiff makes a claim that the Court interprets as an allegation that prison officials failed to sufficiently protect him. In support of this claim, the Plaintiff alleges the following sequence of events. After his first "attack," Plaintiff states that he requested to be "single-celled" at MCI-H as his broken hand rendered him defenseless, but the request was never honored. *Id.* Plaintiff alleges that he was then placed on administrative segregation at MCI-H pending transfer because he had many enemies. Instead of transferring him to another prison, however, on November 2, 2010, prison personnel placed him back in the general population. Only one hour after returning to the general population, Plaintiff was allegedly attacked by members of the same gang that had perpetuated the first attack. *Id.* Plaintiff states that he advised Jackelin Shank, the case management supervisor, of these issues "but received no help or attention." *Id.*

Plaintiff was subsequently transferred to the Roxbury Correctional Institution ("RCI") where he says his renewed requests for physical therapy were ignored. ECF No. 1. Plaintiff states that on February 2, 2012, he got in a fight with members of a different gang and was placed on disciplinary segregation. The Warden assured Plaintiff's family that he would be placed on administrative segregation pending investigation into where he could safely be held, but at the end of his disciplinary segregation term, he was told he would be returned to the general population. Plaintiff, however, refused this return and was given a ticket. The next day, the charge was reduced to an incident report and Plaintiff was placed on administrative segregation. Plaintiff

requested a single cell on administrative segregation due to his concern about being assigned a cellmate who was a possible enemy, but his request was allegedly ignored. *Id*.

In response to Plaintiff's Complaint, Defendants state that they did not, in fact, work at MCI-H during the relevant time period. Plaintiff was housed at MCI-H from March 27, 2008 until June 2, 2011, when he was transferred to RCI. ECF No. 30, Ex. A. Defendant Webb became Warden at MCI-H on December 19, 2011, six months after Plaintiff left MCI-H. *Id*. Defendant Brezler transferred to MCI-H from RCI on July 1, 2011, one month after Plaintiff left MCI-H. *Id*. He did not become Security Chief at MCI-H until January 18, 2012. *Id*. Defendant Ali did not begin working at MCI-H until May of 2011, well after the surgery and related treatment of Plaintiff's broken hand. ECF No. 15, Ex. 1. Dr. Ali avers that he has never met nor provided any medical treatment to Plaintiff. *Id*. Plaintiff generally disputes these dates but offers no evidence that the named Defendants were employed at MCI-H during the time period at issue. ECF No. 32.

As to the failure to protect claim, Defendants state that following the June 2, 2010 incident, the inmates who assaulted Plaintiff were placed on his OBSCIS Enemies List to ensure separation. ECF No. 30, Ex. A, pp. 41-42. The inmates involved in the November 2, 2010 incident did not appear on Plaintiff's OBSCIS Enemies List prior to the assault but were placed on the list thereafter. *Id*. Record evidence demonstrates that staff members were aware of the June 2, 2010 incident and took steps to keep Plaintiff away from the three inmates who attacked him. *Id*., p. 51.

Plaintiff submitted four administrative remedy requests ("ARPs") while housed at MCI-H in 2010 and 2011, none of which concerned Plaintiff's claim that staff failed to protect him or

3

concerns regarding his housing status. *Id.*, Ex. B. Only one related to his medical claims and was promptly responded to. *Id.*

## Standard of Review

### A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B. Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Discussion

### A. Respondeat Superior

Plaintiff's claims against Salik Ali, Corizon, Inc. and Warden Wayne Webb are based solely upon the doctrine of respondeat superior, which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has articulated no action or inaction on the part of Ali or Webb that resulted in a constitutional injury, and accordingly, his claims against Ali and Webb shall be dismissed.

### B. Exhaustion of Administrative Remedies

Defendants also assert that the case should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations and his Complaint must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed to require prisoners to pursue administrative grievances until they receive a final denial of any claims after appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages

of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

The only ARP that Plaintiff filed relating to the issues discussed in this Complaint alleges a denial of adequate medical care. The record shows that the ARP was timely investigated and an orthopedic consult was scheduled in response. After the consult was scheduled, the ARP was dismissed as moot. Plaintiff did not appeal. Plaintiff never filed an ARP with regard to his failure to protect claim. Plaintiff, therefore, failed to institute, much less exhaust, the ARP process with regard to those allegations. ECF No. 30, Ex. B.

Plaintiff states that he did not pursue his administrative remedies because he felt frustrated with the responses he received from prison officials. ECF Nos. 1 & 4. Such frustration does not excuse him from the requirement of pursuing all available avenues within the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Courts have recognized that an exception exists when an administrative remedy is somehow unavailable to an inmate. However, the burden to show that the procedure was unavailable rests with the Plaintiff. *See, e.g., Graham v. Gentry*, 413 F. Appx 660, 663 (4th Cir. 2011) ("in order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure."). The record demonstrates that each of the four ARPs Plaintiff filed while at MCI-H were investigated and responded to and that Plaintiff never

appealed from any determination.  Clearly, therefore, a procedure existed, Plaintiff was aware of the procedure, and Plaintiff did not utilize it.  Plaintiff has submitted a copy of an ARP dated February 20, 2011, complaining of cell searches which was dismissed as repetitive.  ECF No. 32.  He argues that this demonstrates that the ARP process provided no relief.  To the contrary, this ARP has nothing to do with Plaintiff's Complaint regarding medical care or failure to protect and does nothing to support his argument that administrative remedies were unavailable to him.  Plaintiff clearly has failed to exhaust available administrative remedies and his complaint therefore should be dismissed.

## Conclusion

In light of the foregoing, Plaintiff's Complaint shall be dismissed as to all Defendants.  A separate Order follows.


Dated:  November 26, 2013                                   /s/
                                                    Roger W. Titus
                                                    United States District Judge